# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>JANET VORHARIWATT and<br>PAUL VORHARIWATT<br><br>Debtors.<br>_____<br>KEITH MATSON and JOAN MATSON,<br><br>Appellants,<br><br>v.<br><br>JANET VORHARIWATT and<br>PAUL VORHARIWATT<br><br>Appellees. | CASE NO. 17-cv-1255-WQH-MDD<br><br>Bankruptcy No. 16-00658-LA7<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the appeal of the "Judgment of Nondischargeability" issued by the United States Bankruptcy Court, Southern District of California, on June 7, 2017. (ECF No. 1). Appellants Keith and Joanne Matson (the "Matsons") filed their Notice of Appeal (ECF No. 1) on June 20, 2017. *Id.* The Matsons filed their Opening Brief (ECF No. 9) on August 20, 2017. Appellees Janet and Paul Vorhariwatt (the "Vorhariwatts") filed their Brief (ECF No. 10) on September 18, 2017. The Matsons filed their Reply Brief (ECF No. 17) on October 1, 2017. The Court held oral argument on December 7, 2017.

**I. Background**

    **A. The Foreclosure**

The Vorhariwatts purchased real estate located at 31 Sandpiper Strand (the "Property") in 2006. (ECF No. 9-5 at 31). In December 2008, the Vorhariwatts a signed a contract with a tenant to rent the Property. (ECF No. 9-17 at 103). The tenant paid $60,000 to rent the Property for one year, as well as a $10,000 "pet deposit" and a $5,000 security deposit. *Id.* The tenant began to occupy the Property in May 2009. *Id.* In January 2010, the Vorhariwatts and the tenant agreed to extend the lease until June 20, 2011 for another $60,000. (ECF No. 9-5 at 7). The tenant made a $50,000 rent payment in May 2010 and the parties agreed that the pet deposit would be used to cover the remaining $10,000. (ECF No. 9-17 at 104).[1]

Notices of Default for the Property were recorded in August 2009 and July 2010, and Notices of Trustee's Sale for the Property were recorded in November 2009 and October 2010. (ECF No. 9-5 at 6-7). The Matsons purchased the Property at a foreclosure auction on February 3, 2011. *Id.* at 2. The Vorhariwatts were not aware of the foreclosure auction when it occurred, (ECF No. 9-17 at 8), but learned about it by February 4, 2011, *see* ECF 9-13 at 17. Between February 3, 2011 and February 23, 2011, the Matsons requested that the Vorhariwatts turn over the money that the tenant had prepaid to rent the Property from February 3, 2011 (the day the Matsons took ownership of the Property) through June 20, 2011 (the end of the rental period) (the "Prepaid Rent"). *See* ECF No. 9-5 at 9. The Vorhariwatts failed to do so. *See id.*

    **B. State Court Proceedings**

The Vorhariwatts sued the Matsons for wrongful foreclosure in the Superior Court, County of San Diego, on March 30, 2011. *Id.* The Superior Court dismissed the Vorhariwatts' wrongful foreclosure suit against the Matsons on October 7, 2011. *Id.*

---

[1] Although Janet Vorhariwatt testified that she received the $50,000 payment in May 2009, the Court finds that the $50,000 payment was made in May 2010 considering the tenant began to occupy the Property in May 2009 and the $50,000 payment was for an extension of the lease. *See* ECF No. 9-5 at 7 (finding that the Vorhariwatts extended the lease on December 4, 2009).

at 4. On that day, the Matsons again requested that the Vorhariwatts turn over the Prepaid Rent. (ECF No. 9-13 at 38-39). The Vorhariwatts failed to do so. *Id.*

The Matsons then sued the Vorhariwatts in the Superior Court, County of San Diego, for, *inter alia*, wrongful institution of civil proceedings and conversion of the Prepaid Rent. (ECF No. 4-52 at 4). The Matsons' claim for wrongful institution of civil proceedings was based on the Vorhariwatts' wrongful foreclosure suit against the Matsons. *Id.* at 5. The Superior Court found for the Matsons' on their claim for wrongful institution of civil proceedings and entered judgment against the Vorhariwatts for $23,587.55 on that claim. *Id.* at 1, 6.

The Superior Court also found for the Matsons on their claim for conversion. *Id.* at 5. The Superior Court stated:

> The Vorhariwatts kept the rent money attributable to February 3, 2011 to June 20, 2011 despite no longer owning [the Property]. The conversion occurred on February 3, 2011. Mr. Matson and Mrs. Vorhariwatt both testified that Mr. Matson requested the prepaid rent money on October 7, 2011. The Vorhariwatts refused to give them the money.
> At the rental rate of $5,000 per month, multiplied by twelve months, and then divided by 365 days, the daily rental rate is $164.38. February 3, 2011 to June 20, 2011 was 137 days. Therefore, the amount of the Matsons' personal property that the Vorhariwatts converted is $22,520.55.

*Id.* at 5-6. The Superior Court entered judgment against the Vorhariwatts for $22,520.55 on the Matsons' claim for conversion (the "Conversion Judgment"). *Id.* at 1.

**C. Bankruptcy Court Proceedings**

The Vorhariwatts filed a voluntary petition under Chapter Seven in the Bankruptcy Court in February 2016. (ECF No. 9-5 at 10). On April 28, 2016, the Matsons filed a complaint in the Bankruptcy Court seeking a determination that the debt owed under the Superior Court's judgment against the Vorhariwatts (the "Judgment Debt") "is nondischargeable pursuant to 11 U.S.C. Section 523(a)(6)." (ECF No. 9-2 at 16). On January 24, 2017, the Matsons filed a motion for a summary judgment declaring the Judgment Debt exempt from the Vorhariwatts' discharge. *Id.* at 57.

The Bankruptcy Court granted the Matsons' motion with respect to the debt owed under Superior Court's judgment for wrongful institution of civil proceedings. (ECF No. 9-10 at 57) ("[The] judgment in [the Matsons'] favor entered in California Superior Court . . . with respect to malicious prosecution is excepted from, and not discharged by, [the Vorhariwatts'] discharge in bankruptcy.").

The Bankruptcy Court denied the Matsons' motion for a summary judgment that the debt owed under the Conversion Judgment (the "Conversion Debt") is nondischargeable under § 523(a)(6). (ECF No. 9-12 at 4). The Bankruptcy Court reasoned that the Superior Court "says the conversion occurred on February 3, 2011 . . . so the [Matsons are] collaterally estopped from arguing that it occurred on a different date." (ECF No. 9-17 at 6). The Bankruptcy Court held that the Vorhariwatts' actions on February 3, 2011 did not "rise to the level of willful and malicious actions" because the Vorhariwatts did not learn about the foreclosure sale until after that date. *Id.* at 8.

On June 6, 2017, the Bankruptcy Court ordered that

> 1. Judgment shall be entered in favor of the [Matsons], and against the [Vorhariwatts], declaring that portion of the Judgment Debt attributable to malicious prosecution is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).
> 2. Judgment shall be entered in favor of the [Vorhariwatts], and against the [Matsons], declaring that the portion of the Judgment Debt attributable to wrongful conversion is hereby discharged.
> 3. Interest on the nondischargeable judgment shall accrue at the federal judgment rate. . . .

(ECF No. 9-1 at 17).

On June 19, 2017, the Matsons appealed the parts of the Bankruptcy Court's judgment "declaring that the portion of the Judgment Debt attributable to wrongful conversion is hereby discharged" and ordering that "[i]nterest on the nondischargeable judgment shall accrue at the federal judgment rate." *See* ECF No. 1 at 1.

**II. Dischargeability**

The Matsons contend that the Bankruptcy Court erred when it declared that the Conversion Debt was not dischargeable. (ECF No. 9 at 32). The Matsons contend that the Conversion Debt falls within the exception to discharge for "any debt for willful and malicious injury by the debtor to another entity." 11 U.S.C. § 523(a)(6). The Matsons contend that the Bankruptcy Court erred as a matter of law by limiting the period of the conversion to the Vorhariwatts' actions on February 3, 2011 and by ignoring the Vorhariwatts' subsequent conduct. (ECF No. 9 at 13). The Matsons contend that the Bankruptcy Court erred when it applied the doctrine of collateral estoppel to the Superior Court's statement that "[t]he [C]onversion occurred on February 3, 2011" because the Superior Court did not have to determine whether the Conversion included acts that occurred after that date. *Id.* at 20-21. The Matsons contend that conversion is a continuing tort that includes all acts of dominion wrongfully asserted over another's personal property. *Id.* at 18. The Matsons contend that the Bankruptcy Court erred when it did not consider the all of the Vorhariwatts' acts of dominion over the Prepaid Rent to determine whether the Conversion debt was for "willful and malicious injury" and therefore dischargeable under § 523(a)(6). *Id.* at 19.

Federal courts decide whether collateral estoppel applies to a statement in a state court order by applying the collateral estoppel principles of the state in which the state court sits. *In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003) (citing *Gayden v. Nourbakhsh (In re Nourbakhsh)*, 67 F.3d 798, 800 (9th Cir. 1995)). Under California law, collateral estoppel only applies to issues that "have been necessarily decided in the former proceeding." *Id.* (quoting *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001)).

Under California law, "Conversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages." *Plummer v.*

*Day/Eisenberg, LLP*, 108 Cal. Rptr. 3d 455, 460–61 (2010), *as modified on denial of reh'g* (May 21, 2010) (quoting *Farmers Ins. Exchange v. Zerin*, 61 Cal. Rptr. 2d 707, 709 (1997)).

In order to decide the Matsons' claim for conversion, the Superior Court had to decide three issues: (1) whether the Matsons had a right to the Prepaid Rent "at the time of the conversion," (2) whether the Vorhariwatts converted the Prepaid Rent "by a wrongful act," and (3) the amount of damages owed to the Matsons. The Superior Court concluded that the Vorhariwatts converted the Prepaid Rent by a wrongful act, that "[t]he [C]onversion occurred on February 3, 2011," and that the Matsons had a right to the Prepaid Rent on that date. (ECF No. 4-52 at 5). The Superior Court then proceeded to calculate the damages owed to the Matsons by determining the daily rental rate and multiplying it by the number of days between the Matsons taking ownership of the property and the expiration of the lease. *Id.* at 6.

The Superior Court did not decide, and did not have to decide, whether the acts making up the Conversion included acts that occurred after February 3, 2011.[2] The Superior Court was able to determine that the Vorhariwatts were liable for conversion by determining that, at a certain point in time, both (1) the Conversion was occurring and (2) the Matsons had a right to the Prepaid Rent. The Superior Court decided that both of those conditions were satisfied on February 3, 2011, and that, consequently, the Vorhariwatts were liable for conversion. The Superior Court had no reason to decide whether or not the Conversion included events that occurred after that date. Consequently, the Bankruptcy Court erred when it applied the doctrine of collateral estoppel to conclude that the Conversion did not include acts that occurred after February 3, 2011.

Federal courts "look[] to state law to determine whether an act falls within the tort of conversion." *In re Bailey*, 197 F.3d 997, 1000 (9th Cir. 1999). "California law

---

[2] At oral argument, counsel for the Vorhariwatts agreed that the Superior Court did not decide that the Conversion did not include acts that occurred after February 3, 2011.

defines conversion as 'any act of dominion wrongfully asserted over another's personal property in denial of or inconsistent with his rights therein.'" *Id.* (quoting *Igauye v. Howard*, 249 P.2d 558, 561 (Cal. Ct. App. 1952)). Conversion "is a continuing tort as long as the person entitled to the use and possession of his property is deprived thereof." *de Vries v. Brumback*, 349 P.2d 532, 535 (Cal. 1960) (In Bank).[3]

When a person who wrongfully possesses a piece of property fails to comply with a lawful demand for that property, the wrongful possessor's failure to comply with the lawful demand constitutes conversion. *Schroeder v. Auto Driveaway Co.*, 523 P.2d 662, 668 (Cal. 1974) (In Bank). The conversion does not end at the moment a lawful demand is refused, it continues "as long as the person entitled to the use and possession of his property is deprived thereof." *de Vries*, 349 P.2d at 535. The conversion "continu[es]" from the time the first lawful demand is refused until the lawful owner regains possession of his property. *Id.*

In this case, principles of collateral estoppel require this Court to accept the Superior Court's conclusion that the Conversion had begun to occur by February 3, 2011. *See* Part II.A.1.a. The Vorhariwatts have yet to transfer the Prepaid Rent to the Matsons. Consequently, the Conversion has continued from February 3, 2011 until the present. The Conversion includes "any act[s] of dominion" over the Prepaid Rent committed by the Vorhariwatts during that period of time. *Igauye v. Howard*, 249 P.2d 558, 561 (Cal. Ct. App. 1952)).

The Court remands this case to the Bankruptcy Court to determine whether the Vorhariwatts committed acts of dominion over the Prepaid Rent after February 3, 2011. Having determined the acts that make up the Conversion, the Bankruptcy Court must determine whether the Conversion Debt is "for willful and malicious injury by the [Vorhariwatts] to [the Matsons]" and therefore dischargeable under 11 U.S.C. § 523(a)(6).

---

[3] At oral argument, counsel for the Vorhariwatts agreed that conversion is a continuing tort under California law.

## III. Interest on the Judgment Debt

The Bankruptcy Court ordered that:

1. Judgment shall be entered in favor of the [Matsons], and against the [Vorhariwatts], declaring that portion of the Judgment Debt attributable to malicious prosecution is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).
2. Judgment shall be entered in favor of the [Vorhariwatts], and against the [Matsons], declaring that the portion of the Judgment Debt attributable to wrongful conversion is hereby discharged.
3. Interest on the nondischargeable judgment shall accrue at the federal judgment rate. . . .

(ECF No. 9-1 at 17). The Matsons contend that the Bankruptcy Court erred when it ruled that "[i]nterest on the nondischargeable judgment shall accrue at the federal judgment rate." (ECF No. 9 at 30).

A bankruptcy court's authority to apply the federal judgment interest rate comes from two federal statues: 28 U.S.C § 1961 and 11 U.S.C. § 726. The former authorizes bankruptcy courts to apply the federal judgment interest rate to certain "money judgment[s]" entered by bankruptcy courts, but not to declaratory judgments or state court judgments. 28 U.S.C § 1961(a), (d); *see also In re Thrall*, 196 B.R. 959, 962 (Bankr. D. Colo. 1996) ("28 U.S.C. § 1961(a) applies to some judgments entered by bankruptcy courts. However, judgments which do not involve a monetary award are not subject to 28 U.S.C. § 1961." (citations omitted)). A judgment declaring a debt nondischargeable is not a money judgment. *See id.* ("Declaratory judgments determining rights in the bankruptcy process rather than a damage award are not money judgments."). The Bankruptcy Court issued a declaratory judgment, not a monetary judgment. *See* ECF No. 9-1 at 17 ("declaring" what debts are dischargeable without providing for a monetary award). Consequently, 28 U.S.C. § 1961 did not give the Bankruptcy Court the authority to order that "[i]nterest on the nondischargeable judgment shall accrue at the federal judgment rate." *Id.*

Section 726 of the Bankruptcy Code governs the manner in which a bankruptcy estate should be distributed. *See* 11 U.S.C. § 726. Under 11 U.S.C. § 726(a)(1)-(4), the

property of the estate is first used to pay creditors claims. Under 11 U.S.C. § 726(a)(5), any remaining estate property is used to pay post-petition interest on those "claims" at the federal judgment interest rate. *In re Cardelucci*, 285 F.3d 1231, 1234 (9th Cir. 2002). Section 726(a)(5) authorizes bankruptcy courts to apply the federal judgment interest rate only to claims against the estate; it does not authorize bankruptcy courts to apply the federal judgment interest rate to debts that are not discharged in the bankruptcy proceeding. Consequently, 11 U.S.C. § 726(a)(5) did not authorize the Bankruptcy Court to apply the federal judgment interest rate to the nondischargeable Judgment Debt (although it did authorize the Bankruptcy Court to apply the federal judgment interest rate to the Matsons' claim against the bankruptcy estate). *See In re Augé*, 559 B.R. 223, 230 (Bankr. D.N.M. 2016) ("Even though [the creditor's] allowed claim against the estate can be limited to the federal judgment rate, [the creditor] likely would be entitled to collect post-petition interest at [the state judgment interest rate] against [the debtor] personally [] because where a creditor holds a nondischargeable debt . . . the creditor may collect the debt and post-petition interest after the debtor receives a discharge.").

The bankruptcy court erred when it ordered that "[i]nterest on the nondischargeable judgment shall accrue at the federal judgment rate." (ECF No. 9-1 at 17).

**IV. Conclusion**

IT IS HEREBY ORDERED that the following language in the Judgment of Nondischargeability issued by the Bankruptcy Court on June 7, 2017 is VACATED:

> 2. Judgment shall be entered in favor of the Defendants and against the Plaintiffs declaring that the portion of the Judgment Debt attributable to wrongful conversion is hereby discharged.
> 3. Interest on the nondischargeable judgment shall accrue at the federal judgment rate.

This action is REMANDED to the United States Bankruptcy Court for the Southern District of California for further proceedings consistent with this Order. The Clerk of the Court shall close the case.

DATED: December 18, 2017

*William Q. Hayes*
**WILLIAM Q. HAYES**
United States District Judge